# IN THE COURT OF APPEALS OF IOWA

No. 18-1734
Filed February 20, 2019

**IN THE INTEREST OF M.K.,**
**Minor Child,**

**J.J., Father,**
        Appellant.
_____


        Appeal from the Iowa District Court for Polk County, Romonda D. Belcher,

District Associate Judge.


        A father appeals an order terminating his parental rights to his two-year-old

son. **AFFIRMED.**


        Alexandra M. Nelissen, Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        ConGarry Williams, Des Moines, guardian ad litem for minor child.


        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A father, Ja'Maur, challenges the juvenile court's order terminating his parental relationship with his son, M.K., who was born in September 2016. Ja'Maur argues (1) the State did not present clear and convincing proof M.K. could not be safely returned to his care; (2) the State did not make reasonable efforts to reunite the family; and (3) termination was not in M.K.'s best interests because the child would lose "vital connections" with biological relatives.

After our independent review of the record,[1] we reach the same conclusion as the juvenile court—despite the State's reasonable efforts, the record revealed "ongoing concerns about the safety of the child" if returned to the father's custody. *See* Iowa Code §§ 232.102(12), 232.116(1)(h) (2018). And the evidence supports a finding that termination was in M.K.'s best interests despite the existence of a bond with his father and paternal family. *See id.* § 232.116(2), (3).

## I. Facts and Prior Proceedings

When M.K. was seven months old, the State filed a petition alleging he was a child in need of assistance (CINA). The petition alleged M.K.'s mother was the victim of domestic violence at the hands of her paramour, Stuart.[2] The juvenile court adjudicated M.K. as a CINA, and the mother consented to the Iowa

---

[1] We review child-welfare actions de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We uphold an order terminating parental rights if the record contains clear and convincing evidence to support the statutory grounds. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when it leaves no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

[2] Stuart was initially assumed to be M.K.'s father. In July 2017, the juvenile court learned Stuart was not M.K.'s father and dismissed him from the case. At the same time, the court ordered a paternity test for Ja'Maur.

Department of Human Services (DHS) removal of M.K. from her custody in May 2017.

In August 2017, paternity testing showed Ja'Maur was M.K.'s father. In late August, Ja'Maur started weekly supervised visits with M.K. According to DHS records, Ja'Maur was inconsistent in his visitation from September 2017 until February 2018. In October 2017, the DHS reported the existence of allegations of child sexual abuse against Ja'Maur. In 2012, while living in Missouri, Ja'Maur was arrested for sexual contact with a child but pleaded guilty to assault. The juvenile court also considered a child-abuse assessment from the summer of 2017 in which an Iowa child protection worker found Ja'Maur had indecent contact with a twelve-year-old girl he was babysitting. Despite that history, Ja'Maur failed to complete a psychosexual evaluation as requested by the DHS.

During the CINA case, Ja'Maur did not pursue treatment for his mental-health diagnoses and could not maintain stable housing. Additionally, reports from the Family Safety, Risk, and Permanency (FSRP) worker show Ja'Maur was habitually late to his visits with M.K. that spring, though when he arrived his interactions with his son were warm and appropriate.

In June 2018, the State filed a petition to terminate parental rights. In August 2018, the juvenile court held a hearing on the petition. The State offered numerous exhibits in support of termination but did not present live testimony. The mother consented to termination of her parental rights. Ja'Maur appeared with counsel but he did not present any independent evidence. Counsel explained:

> [Ja'Maur] does not believe that his parental rights should be terminated, but he also understands that he has not been able to do the things that the court asks of him for financial reasons. He very

> much believes that the department was predisposed against him due to his sexual offender documentation and history. He clearly has a bond with the child as the court has seen. It's my understanding that the hope is relative placement happen.

M.K.'s paternal grandmother, aunt, and uncle attended the termination hearing and expressed interest in being long-term placements for the child. The juvenile court conveyed its appreciation for the family's support for M.K. but advised, "[I]f the court enters an order that terminates the parental rights, this court cannot direct placement of the child."

In September, the juvenile court issued its order terminating Ja'Maur's parental rights under Iowa Code section 232.116(1)(h). The court also found termination was in M.K.'s best interests under the standard in section 232.116(2), reasoning, "The child's safety is the Court's primary consideration. . . . The father is still at professionally supervised visits and has struggled with satisfying his own needs." The court also decided no discretionary factor in section 232.116(3) precluded termination. Ja'Maur appeals the termination order.

## II.    Analysis

### A.  Statutory Ground

In his petition on appeal, Ja'Maur contests the statutory basis for termination.[3] Termination under Iowa Code section 232.116(1)(h) requires proof of these elements:

> (1) The child is three years of age or younger.

---

[3] The State contends Ja'Maur did not preserve error on this issue in the juvenile court, because he did not offer any resistance to the State's evidence and instead focused on his hope M.K. would be placed with a relative. We find Ja'Maur's appearance at the hearing and the statement by his attorney that he opposed the termination of his parental rights was sufficient to preserve error.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Ja'Maur contests only the last element—that M.K. could not be returned to his care at the time of the termination hearing. *See A.M.*, 843 N.W.2d at 111 (describing "present time" as the time of the termination hearing).

The State offered clear and convincing evidence to support the court's finding that M.K. could not be safely placed with Ja'Maur at the time of the termination hearing. The founded child-abuse assessment against Ja'Maur involving indecent contact with a child entrusted to his care posed a legitimate cause for concern. Because Ja'Maur ignored the DHS recommendation that he complete a psychosexual evaluation, he was unable to move past fully-supervised visitation with M.K. *See In re C.H.*, 652 N.W.2d 144, 151 (Iowa 2002) (holding parent's failure to comply with requirements of DHS case permanency plan, including participation in sexual-offender treatment, showed his lack of commitment to reunification). Ja'Maur was also inconsistent in his visitation, frequently arriving late and sometimes missing a whole month of interactions.

The record also shows Ja'Maur had untreated mental-health issues and unstable housing. Like the juvenile court, we conclude Ja'Maur did not make enough progress in safe parenting to assume care of M.K.

**B. Reasonable Efforts**

The DHS is required to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000). In turn, the parents must ask for additional services before permanency or termination proceedings if they believe the current services are insufficient. *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005); *see also* Iowa Code § 232.99(3). Consequently, to preserve a reasonable-efforts challenge, a parent must have demanded a change in the services.

Ja'Maur contends the DHS did not make reasonable efforts to reunite the family because the social worker "made up her mind prior to the permanency hearing" that M.K. could never be placed with him because of the sexual-abuse allegations. The State argues Ja'Maur did not preserve this claim for appeal because he did not inform the juvenile court during the CINA case that the services were inadequate. We agree Ja'Maur did not preserve error and, therefore, we decline to reach the merits of the claim. *See A.A.G.*, 708 N.W.2d at 91.

**C. Best Interests and Closeness of Relationship**

Ja'Maur alleges termination was not in M.K.'s best interests for two reasons: (1) "the child will not have the ability to establish important and vital connections with appropriate biological relatives" and (2) "the child will be deprived of unique important cultural opportunities by being placed outside of an African American

home." Ja'Maur also alleges termination would be detrimental to M.K. because of the closeness of their relationship. *See* Iowa Code § 232.116(3)(c).[4]

In determining best interests, we give primary consideration to M.K.'s safety, to the best placement for furthering his long-term nurturing and growth, and to his physical, mental, and emotional condition and needs. *See id.* § 232.116(2); s*ee also In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting use of an unstructured best-interests test). Applying section 232.116(3)(c), we must decide if clear and convincing evidence shows severing the legal relationship would be detrimental to M.K. due to his close bond with Ja'Maur. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018) (holding burden to prove this permissive exception rests on the parent once the State satisfies the statutory ground for termination).

On the question of best interests, Ja'Maur expresses concern about M.K. losing touch with his paternal relatives. But the DHS efforts to find a permanent placement for M.K. after termination is not before our court in this appeal. When applying the factors in section 232.116(2), we must consider M.K.'s safety and whether reunification with Ja'Maur would promote the child's well-being. Because Ja'maur did not complete a psychosexual evaluation or address his own mental-health issues, the DHS was not able to determine whether he could safely care for M.K., who had been out of his parents' custody for more than one year. Accordingly, on this record, termination of parental rights and movement toward permanency is in M.K.'s best interests.

---

[4] In his petition on appeal, Ja'Maur also cites section 232.116(3)(b). But that provision only applies to children over ten years of age.

On the question of bonding, the FSRP worker described pleasant visits between M.K. and his father.  But the record does not show their relationship was so close that M.K. will be disadvantaged by the termination or any detriment would outweigh Ja'Maur's inability to provide a safe home for his son.  *See D.W.*, 791 N.W.2d at 709.  Section 232.116(3)(c) does not stand in the way of termination.

**AFFIRMED.**